**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANGELA SABATINO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:26-cv-00959-SRW** |
| | ) | |
| **W.C.&D. ENTERPRISES, INC. D/B/A WALTER KNOLL FLORIST** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant W.C.&D. Enterprises, Inc. d/b/a Walter Knoll Florist ("Walter Knoll"), by and through its undersigned counsel, and submits its Statement of Uncontroverted Material Facts in support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 4.01(E) of the United States District Court for the Eastern District of Missouri.

**A. Identification of the Parties and Relevant Claims**

1. Defendant W.C.&D. Enterprises, Inc. does business as Walter Knoll Florist ("Walter Knoll") and was Plaintiff Angela Sabatino's employer. (Petition, ¶¶ 3-4).

2. Plaintiff Angela Sabatino ("Plaintiff") is a woman and former employee of Walter Knoll. (Petition, ¶¶ 3, 7).

3. Plaintiff began working for Walter Knoll on November 22, 2022. (Ex. A- Sabatino Dep. 16:20-25, 17:1-3).

4. Plaintiff submitted a written resignation to Walter Knoll on February 26, 2024. (Ex. A- Sabatino Dep. 136:4-11; Ex. E- Plaintiff's February 26, 2024 Resignation Letter and Acknowledgment).

5. On February 3, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights alleging sex discrimination/sexual harassment and retaliation. (Petition, ¶ 6; Ex. A- Sabatino Dep. 124:19-25, 125:1).

6. After her resignation, Plaintiff amended her administrative charge to allege that she had been constructively discharged. (Petition, ¶ 6; Ex. A- Sabatino Dep. 137:20-22, 138:4-22).

7. Plaintiff commenced this action by filing a Petition in the Circuit Court of the City of St. Louis, Missouri, asserting Title VII claims for sexual harassment and retaliation and alleging that she was constructively discharged. (Petition, ¶¶ 1, 8-35; Notice of Removal, ¶ 1).

**B. Plaintiff's Employment, Policies, and Supervisory Structure**

8. When Plaintiff began working for Walter Knoll, her position was Display Design Assistant. She worked under Tadd Stone, who was Plaintiff's direct supervisor. (Ex. A- Sabatino Dep. 17:4-9, 20:12-23).

9. Plaintiff's initial duties included setting up store fronts, handling merchandise and inventory, creating window displays, closing stores, and assisting the floral department during holidays. (Ex. A- Sabatino Dep. 20:12-23).

10. On her first day of employment, Plaintiff received and electronically signed a Worksite Employee Acknowledgment, a Policy Against Unlawful Harassment, Discrimination, and Retaliation, and a handbook acknowledgment. (Ex. A- Sabatino Dep. 21:11-25, 22:1-13, 23:7-19, 24:3-23).

11. Plaintiff testified that she read the Policy Against Unlawful Harassment, Discrimination, and Retaliation and understood it. (Ex. A- Sabatino Dep. 23:14-21).

12. Walter Knoll's Employee Handbook states that the company is committed to a workplace free from discrimination and harassment, including sexual harassment, and identifies unwanted sexual advances and visual, verbal, or physical conduct of a sexual nature as prohibited conduct. (Ex. D- Employee Handbook at 45-46).

13. The handbook directs an employee who experiences or witnesses sexual or other unlawful harassment to report it immediately to the employee's supervisor and, if the supervisor is unavailable or the employee believes it would be inappropriate to report to the supervisor, to Human Resources or another member of management. (Ex. D- Employee Handbook at 46).

14. The handbook further states that an employee will not be punished or subjected to reprisal for reporting sexual harassment or raising concerns about it, and that allegations of sexual harassment will be investigated. (Ex. D- Employee Handbook at 46).

15. Plaintiff's separately issued Policy Against Unlawful Harassment, Discrimination, and Retaliation instructed employees that, if Walter Knoll did not completely and timely address a harassment complaint, the employee should contact G&A Partners directly. Plaintiff electronically signed an acknowledgment of that policy on November 22, 2022. (Ex. O- Policy Against Unlawful Harassment, Discrimination, and Retaliation).

16. In June 2023, approximately six months into Plaintiff's employment, Chuck Knoll emailed Plaintiff that Tadd Stone was happy with her performance and that Walter Knoll was increasing her pay by fifty cents per hour. (Ex. G- June 14, 2023 Performance Review and Pay Increase Email).

17. By summer 2023, David Knoll became Tadd Stone's supervisor. Plaintiff remained directly supervised by Tadd. (Ex. A- Sabatino Dep. 29:14-25, 30:1-7).

18. As David became involved with Tadd's department, Plaintiff and Tadd also began working in a Christmas showroom and performing additional holiday-display and greenhouse work. (Ex. A- Sabatino Dep. 30:8-25, 31:1-24).

19. Plaintiff, Tadd, and David used workspace in the same Christmas showroom area. (Ex. A- Sabatino Dep. 30:16-24).

**C. Plaintiff’s Allegations Concerning David Knoll Before January 25, 2024**

20. Plaintiff testified that David Knoll was the only person at Walter Knoll whom she contends sexually harassed her. (Ex. A- Sabatino Dep. 32:12-20).

21. Plaintiff identified several categories of conduct by David that she considered sexually harassing: an alleged screw-gun contact, comments concerning a plush rose, comments about a "rack," a comment following Plaintiff's offer of dates to eat, and a comment while Plaintiff was on her knees plugging in Christmas lights. (Ex. A- Sabatino Dep. 103:5-17, 106:3-16, 110:3-20).

22. Plaintiff testified that the alleged screw-gun contact occurred while she and other employees were installing holiday decorations at Metropolitan Square in November 2023. Plaintiff was bent over working with garland when David returned with a drill/screw gun. (Ex. A- Sabatino Dep. 73:9-25, 74:1-18).

23. Plaintiff testified that she felt the screw gun touch or brush her rear end for approximately two seconds, turned around, and asked David what he was doing. (Ex. A- Sabatino Dep. 78:12-24, 79:2-12).

24. According to Plaintiff, David responded that she had "put that out there" or words to that effect. Tadd Stone and David's daughter were present. (Ex. A- Sabatino Dep. 74:21-24, 79:13-17).

25. Plaintiff testified that the alleged screw-gun contact occurred one time. (Ex. A- Sabatino Dep. 110:3-8).

26. Plaintiff discussed the screw-gun incident with Tadd after it occurred. Plaintiff testified that Tadd told her that he would support her if she wanted to report the incident to David or Chuck Knoll. (Ex. A- Sabatino Dep. 81:17-25, 82:1-14).

27. Plaintiff also testified that, while she pushed merchandise racks, David made comments such as "nice rack" or "nice big rack." Plaintiff estimated that these comments occurred approximately five times. (Ex. A- Sabatino Dep. 87:8-17, 110:15-19).

28. Plaintiff testified that David made one comment after she offered him dates to eat while working at the Fox Theatre. (Ex. A- Sabatino Dep. 89:17-25, 90:1-25, 110:12-14).

29. Plaintiff further testified that David once made a "while you're down there" comment while Plaintiff was on her knees plugging in Christmas-tree lights in the showroom. (Ex. A- Sabatino Dep. 106:8-13, 107:1-24, 110:9-11).

30. When asked to identify additional specific comments or conduct beyond the categories she described, Plaintiff testified that she could not provide additional specific examples. (Ex. A- Sabatino Dep. 110:20-25, 111:1-7).

31. Plaintiff testified that David had also smacked male employee Michael Mercer on the rear end on multiple occasions. (Ex. A- Sabatino Dep. 95:1-8).

32. When asked whether David engaged in the conduct Plaintiff identified because of her sex, Plaintiff responded, “No, not because of my sex,” and testified, “He could do it to a guy or girl.” (Ex. A- Sabatino Dep. 101:17-25).

**D. The January 25, 2024 Rose Incident and Plaintiff’s Communication with Robin Knoll**

33. On January 25, 2024, Plaintiff and Tadd were finishing a Valentine's Day display when David examined a plush rose used in the display. (Ex. A- Sabatino Dep. 83:9-18).

34. Plaintiff testified that David commented that the rose looked like a vagina, rubbed or tapped the flower, and said words to the effect of "you've got to get it right in that spot." (Ex. A- Sabatino Dep. 83:19-25, 84:1-25).

35. Plaintiff testified that the rose incident occurred one time. (Ex. A- Sabatino Dep. 110:6-8).

36. After the rose incident, Plaintiff had a conversation with Robin Knoll. Plaintiff testified that she told Robin that she was "sick of David being David" and could not recall whether she gave Robin specific details about what David had done. (Ex. A- Sabatino Dep. 65:16-25, 66:1-16, 67:1-9).

37. Plaintiff testified that the January 25 rose incident was the last incident in which she contends David sexually harassed her before her January 30 complaint. Plaintiff identified no harassment on January 26, January 28, or January 29. (Ex. A- Sabatino Dep. 112:3-16).

**E. Plaintiff’s January 28, 2024 Sunday Work and Management’s Accountability Concerns**

38. Plaintiff's regular schedule was generally Monday through Friday, although she sometimes worked weekends when work needed to be completed. (Ex. A- Sabatino Dep. 34:2-19).

39. Walter Knoll's Employee Handbook provided that employees could not work overtime without supervisor approval and that nonexempt employees could begin work before their scheduled start time or continue working after their scheduled end time only with advance supervisor approval. (Ex. D- Employee Handbook at 29, 33).

40. Plaintiff testified that she sometimes took it upon herself to come in on weekends to complete work and that, when Tadd was absent, she sometimes worked without reporting to another manager. (Ex. A- Sabatino Dep. 35:1-18).

41. On Sunday, January 28, 2024, Plaintiff clocked in at approximately 8:10 a.m. and worked approximately five hours. (Ex. A- Sabatino Dep. 36:16-22; Ex. F- January 22–28, 2024 Time Record).

42. Plaintiff testified that she came in that Sunday because she had a deadline to complete Christmas inventory work. (Ex. A- Sabatino Dep. 37:6-15).

43. Plaintiff testified that she made the decision to perform that Sunday work herself because the work needed to be completed. (Ex. A- Sabatino Dep. 37:6-15).

44. Plaintiff could not testify that she had informed Tadd in advance that she would work on Sunday, January 28. (Ex. A- Sabatino Dep. 38:3-8).

45. Plaintiff testified that January 28 was the first weekend-work instance that management questioned. (Ex. A- Sabatino Dep. 59:9-22, 62:19-25).

46. On January 30, during the meeting later discussed below, Plaintiff acknowledged that she came in Sunday to work on Christmas inventory and stated that she had not understood that she needed approval to make up hours. (Ex. B- Jan. 30, 2024 Meeting Tr. 6-8).

47. During that same January 30 discussion, Tammy Knoll told Plaintiff that the concern was not that Plaintiff had performed work, but that management had not known she would

be there and needed better communication regarding the department's work. (Ex. B- Jan. 30, 2024 Meeting Tr. 7-10).

48. David and Tammy also discussed management's use of daily agendas, schedules, and calendars to improve communication and track what work was being performed and when. (Ex. B- Jan. 30, 2024 Meeting Tr. 6, 9-10).

**F. The January 30, 2024 Meeting and Plaintiff's Harassment Complaint**

49. On January 30, 2024, Plaintiff met with David Knoll and Tammy Knoll. (Ex. A- Sabatino Dep. 112:13-25; Ex. B- Jan. 30, 2024 Meeting Tr. 1).

50. The meeting began with David and Tammy discussing the strained working relationship between Plaintiff and David and management's desire to improve communication. (Ex. B- Jan. 30, 2024 Meeting Tr. 1, 12-13).

51. Plaintiff then told David and Tammy that David had made sexual remarks that made her uncomfortable. (Ex. B- Jan. 30, 2024 Meeting Tr. 1-2).

52. Plaintiff described the screw-gun incident and the rose incident during the meeting. (Ex. B- Jan. 30, 2024 Meeting Tr. 2-4; Ex. A- Sabatino Dep. 83:1-9, 86:20-24).

53. David denied remembering the screw-gun incident and stated that the allegation should be escalated and investigated by others because he was the person accused. (Ex. B- Jan. 30, 2024 Meeting Tr. 2-3).

54. Tammy told Plaintiff that if David could not work with Plaintiff because of the complaint, Tammy and Tadd could work with Plaintiff instead. (Ex. B- Jan. 30, 2024 Meeting Tr. 4, 10-11).

55. Tammy further told Plaintiff that sexual harassment would not be allowed and that it was right for Plaintiff to say something. (Ex. B- Jan. 30, 2024 Meeting Tr. 10-11, 14).

56. During the meeting, David left and Chuck Knoll joined so that Plaintiff could continue discussing her concerns without David present. (Ex. B- Jan. 30, 2024 Meeting Tr. 14-15; Ex. A- Sabatino Dep. 112:17-25, 113:1-4).

57. Chuck asked Plaintiff whether she wanted to involve law enforcement concerning the alleged physical contact. Plaintiff said she did not want the police involved. Chuck explained that he raised the option because he did not want to act as a barrier if Plaintiff wanted to make a police report. (Ex. B- Jan. 30, 2024 Meeting Tr. 16-18).

58. Plaintiff told Chuck and Tammy that she wanted the conduct to stop and did not want it to happen to other people. (Ex. B- Jan. 30, 2024 Meeting Tr. 17-18).

59. Chuck and Tammy discussed changing the reporting structure so that Plaintiff would work through Tadd and Tammy rather than have David directly supervise her day-to-day work. (Ex. B- Jan. 30, 2024 Meeting Tr. 21-24).

60. Chuck specifically explained that David did not need to be the person directing Plaintiff's work and stated, "We can change that." (Ex. B- Jan. 30, 2024 Meeting Tr. 21-22).

61. Plaintiff expressly stated during the meeting that she was not asking Walter Knoll to terminate David and that she would not want David terminated. (Ex. B- Jan. 30, 2024 Meeting Tr. 24).

62. Plaintiff later testified that she was told either during or after the January 30 meeting that Tammy would supervise Tadd and David would no longer remain in that reporting relationship. (Ex. A- Sabatino Dep. 113:5-25).

63. After the January 30 meeting, Plaintiff had no substantive communication with David and identified no further comment or conduct by David that she considered sexually harassing. (Ex. A- Sabatino Dep. 114:1-18, 140:15-23).

### G. Walter Knoll's Response and the January 31, 2024 Log Requirement

64. On January 31, 2024, Plaintiff reported to work and found a notebook on her desk. Tadd told Plaintiff that she was expected to keep a log of her work activities. (Ex. A- Sabatino Dep. 115:8-19).

65. Plaintiff asked to meet with Tammy about the notebook, and Plaintiff, Tammy, and Tadd met that day. (Ex. A- Sabatino Dep. 115:13-24; Ex. C- Jan. 31, 2024 Meeting Tr. 1).

66. At the January 31 meeting, Plaintiff told Tammy that she felt the log requirement was punishment for the harassment complaint she had made the previous day. Tammy immediately told Plaintiff it was not. (Ex. C- Jan. 31, 2024 Meeting Tr. 1).

67. Tadd identified Chuck as the person who had requested the log. (Ex. C- Jan. 31, 2024 Meeting Tr. 2).

68. Tammy explained that Walter Knoll had required employees to track their activities at other times and that the purpose was to understand what work was being performed. (Ex. C- Jan. 31, 2024 Meeting Tr. 1-2).

69. When Plaintiff asked why the requirement arose after her complaint, Tammy specifically explained that it came from the Sunday work issue, "not from the other issue." (Ex. C- Jan. 31, 2024 Meeting Tr. 2).

70. Tadd likewise explained that Chuck wanted more accountability concerning what Plaintiff was doing and when she was doing it, and Tadd acknowledged that the accountability issue also fell on him because he had not known Plaintiff was working. (Ex. C- Jan. 31, 2024 Meeting Tr. 3).

71. At the end of the January 31 meeting, Tammy and Tadd again told Plaintiff that the log was not a repercussion for the January 30 harassment complaint and was instead connected to the January 28 Sunday work. (Ex. C- Jan. 31, 2024 Meeting Tr. 4).

72. Plaintiff acknowledged during the January 31 meeting that she should have asked someone before coming in to work on Sunday, while also explaining that she had believed she was simply completing work before a deadline. (Ex. C- Jan. 31, 2024 Meeting Tr. 4).

73. At her deposition, Plaintiff testified that no one ever told her she was required to keep the log because she had complained of sexual harassment. (Ex. A- Sabatino Dep. 58:16-19).

74. Plaintiff also testified that the purpose of the log was so management could know where she was and what she was doing because of communication problems within management. (Ex. A- Sabatino Dep. 58:8-15).

75. Plaintiff nevertheless believed the log was retaliatory because it was imposed immediately after her complaint and because she had not previously been asked to keep such a log. (Ex. A- Sabatino Dep. 58:20-25, 59:1-8, 151:10-17).

76. Plaintiff performed little or no work on January 31 after the meeting; Tammy and Tadd suggested that she take the rest of the day to regroup. (Ex. A- Sabatino Dep. 115:20-25, 116:1-6).

77. Plaintiff did not complete a work log on January 31. (Ex. A- Sabatino Dep. 116:7-11).

78. Plaintiff returned to work on February 1, 2024, but again did not complete the log because she decided she would not do it. (Ex. A- Sabatino Dep. 116:12-25, 117:1-2).

### H. February 2 Through February 25, 2024: Charge, Medical Leave, and Communications Regarding Plaintiff's Return

79. February 1, 2024 was Plaintiff's last day physically worked at Walter Knoll. (Ex. A- Sabatino Dep. 124:2-11; Ex. N- January 29–February 4, 2024 Time Record).

80. Plaintiff testified that she had no interaction with David on January 31 or February 1 beyond seeing him in passing. (Ex. A- Sabatino Dep. 129:19-25, 130:1-9).

81. On February 2, Plaintiff emailed Tammy that she would not be at work and that she was attempting to obtain medical help because she was "not okay." (Ex. A- Sabatino Dep. 125:5-24; Ex. H- February 2, 2024 Email from Plaintiff to Tammy Knoll).

82. On February 2, Chuck emailed Plaintiff a written recap of the January 30 meeting. The recap stated that Walter Knoll would remove David from interactions with Plaintiff and Tadd as much as possible, place Tammy in an oversight role, and generally have Plaintiff work while Tammy or Tadd was present. (Ex. A- Sabatino Dep. 126:16-25, 127:1-23; Ex. I- February 2, 2024 Recap of January 30 Meeting).

83. Plaintiff testified that the February 2 email was consistent with a response that had been discussed during the January 30 meeting and was not a surprise to her. (Ex. A- Sabatino Dep. 127:14-23).

84. Plaintiff testified that she was not seeking David's discharge; she wanted his conduct toward her to stop. (Ex. A- Sabatino Dep. 127:24-25, 128:1-7).

85. On February 3, Plaintiff signed and filed her original Charge of Discrimination. (Ex. A- Sabatino Dep. 124:19-25, 125:1, 138:16-22).

86. On February 5, 2024, Plaintiff's counsel sent Chuck Knoll a courtesy copy of Plaintiff's Charge of Discrimination, thereby notifying Walter Knoll of the administrative charge. (Ex. P- February 5, 2024 Correspondence from Plaintiff's Counsel).

87. On February 7, Plaintiff was seen by a physician assistant and received a note excusing her from work through February 19, 2024. (Ex. A- Sabatino Dep. 130:19-25, 131:4-20; Ex. J- February 7, 2024 Medical Note).

88. On February 7, Tammy emailed Plaintiff to ask whether she would be at work the next day and told Plaintiff that Tammy wanted to make sure Plaintiff felt safe and should check in with Tammy or Tadd. Plaintiff responded on February 8 that she was not feeling well and would not return that day. (Ex. A- Sabatino Dep. 132:6-25; Ex. K- February 7–8, 2024 Email Exchange Between Tammy Knoll and Plaintiff).

89. On February 12, Plaintiff asked Chuck to use accrued PTO and asked about a copy of the harassment complaint she believed would be submitted to G&A Partners. (Ex. A- Sabatino Dep. 133:16-25, 134:1-22; Ex. L- February 12, 2024 Email Exchange Regarding PTO, Harassment Complaint, and Return to Work).

90. Chuck responded that he did not understand Plaintiff's request for a copy of a harassment complaint and added that Tadd was ready for Plaintiff's help after Valentine's Day, asking when Plaintiff could "rejoin us." Plaintiff testified that she understood the email as asking when she could return to work. (Ex. A- Sabatino Dep. 135:10-20; Ex. L- February 12, 2024 Email Exchange Regarding PTO, Harassment Complaint, and Return to Work).

91. Plaintiff testified that, sometime before her February 26 resignation, she called G&A Partners and was told that G&A had nothing from Chuck concerning her complaint. (Ex. A- Sabatino Dep. 153:11-25, 154:3-19).

92. After that call, Plaintiff did not submit her own complaint to G&A, despite having received Walter Knoll's harassment policy and knowing that G&A could receive complaints. Plaintiff testified that she did not know why she did not make the complaint herself after learning

that G&A did not have one. (Ex. A- Sabatino Dep. 154:3-6, 155:21-25, 156:1-13, 156:22-25, 157:1-3).

### I. Plaintiff's February 26, 2024 Resignation and Her Retaliation and Constructive-Discharge Allegations

93. On February 26, 2024, Plaintiff emailed Walter Knoll a resignation letter. Plaintiff acknowledged at deposition that the February 26 email was her resignation letter and that she submitted it at approximately 7:47 a.m. (Ex. A- Sabatino Dep. 136:4-11; Ex. E- Plaintiff's February 26, 2024 Resignation Letter and Acknowledgment).

94. In the resignation letter, Plaintiff stated that she was resigning because of anxiety about returning to work, her belief that Walter Knoll had not adequately investigated her complaint, and her concern that the log requirement constituted retaliation. (Ex. E- Plaintiff's February 26, 2024 Resignation Letter and Acknowledgment).

95. Walter Knoll acknowledged Plaintiff's resignation and processed her separation as a quit. The G&A Partners record lists February 26 in the field labeled "Last Day Worked," February 27 as the termination date, and "Quit/no notice given" as the termination reason. (Ex. M- February 27, 2024 G&A Partners Termination Record; Ex. E- Plaintiff's February 26, 2024 Resignation Letter and Acknowledgment).

96. After January 30, Tadd communicated with Plaintiff to ask how she was doing and whether she was returning to work. Plaintiff testified that she found nothing offensive or inappropriate about those communications. (Ex. A- Sabatino Dep. 136:20-25, 137:1-9).

97. After resigning, Plaintiff filed an amended administrative charge stating that she had been "constructively discharged" because she could not return to what she characterized as a hostile work environment. (Ex. A- Sabatino Dep. 137:20-22, 138:4-22).

98. At deposition, Plaintiff testified that she did not know the definition of constructive discharge. (Ex. A- Sabatino Dep. 138:23-25, 139:1-6).

99. Plaintiff agreed that eliminating interaction between her and David was a response to her January 30 complaint. (Ex. A- Sabatino Dep. 140:4-14).

100. Plaintiff further admitted that David made no comments and engaged in no conduct that she considered offensive, inappropriate, or sexually harassing after the January 30 meeting. (Ex. A- Sabatino Dep. 140:15-23).

101. Plaintiff testified that she was not harassed by David at any time between January 30 and February 26. (Ex. A- Sabatino Dep. 142:17-25).

102. When asked what occurred in the workplace after January 30 that made her working conditions so intolerable that she felt compelled to quit, Plaintiff identified retaliation and her belief that Walter Knoll had not taken her complaint seriously. (Ex. A- Sabatino Dep. 147:15-25, 148:1-11).

103. When asked to identify the retaliation, Plaintiff identified the requirement that she keep the work log. (Ex. A- Sabatino Dep. 148:3-14, 151:1-25, 152:3-16).

104. When asked whether there was any retaliation other than the work log, Plaintiff testified, "Not that I can think of right now." (Ex. A- Sabatino Dep. 152:22-25).

105. Plaintiff never completed the work log and admitted that the log did not impede her ability to perform her job. (Ex. A- Sabatino Dep. 148:12-24).

106. Plaintiff also testified that the purpose of having her complaint documented with G&A was to protect her from further harassment by David. (Ex. A- Sabatino Dep. 157:18-25, 158:1-16, 159:7-12).

107. Plaintiff ultimately agreed that David's harassment stopped after January 30 and testified, "Yes, it stopped." (Ex. A- Sabatino Dep. 159:13-17).

**J. Plaintiff's Post-Employment Work and Claimed Damages**

108. Plaintiff began working for Sugar Fire Events, now Culinary Canvas, while she was still employed by Walter Knoll, approximately in spring 2023. (Ex. A- Sabatino Dep. 12:14-23, 13:1-6).

109. While employed by Walter Knoll, Plaintiff picked up event work for Sugar Fire/Culinary Canvas on nights and weekends as her schedule allowed. (Ex. A- Sabatino Dep. 14:18-25, 15:1-4).

110. After leaving Walter Knoll, Plaintiff began picking up as many event assignments as she could and, as of her deposition, attempted to work full time during busy periods. (Ex. A- Sabatino Dep. 15:5-20).

111. Plaintiff testified that her Culinary Canvas work pays approximately $20 to $30 per hour depending on whether she is performing setup, bartending, or event-management work. (Ex. A- Sabatino Dep. 10:9-25, 11:1-12).

112. Plaintiff testified that, aside from Culinary Canvas and a one-day flower-installation job, she had not worked for another employer after leaving Walter Knoll. (Ex. A- Sabatino Dep. 14:8-17).

Respectfully submitted,

McMAHON BERGER, P.C.

/s/ Robert D. Younger___________
Robert D. Younger, 42909MO
Nick P. Sikes, 76961MO
2730 North Ballas Road, Suite 200
P.O. Box 31901
St. Louis, Missouri 63131-3039
(314) 567-7350 – Telephone
(314) 567-5968 – Facsimile
younger@mcmahonberger.com
sikes@mcmahonberger.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 6th day of October, 2026, the foregoing was filed electronically with the Clerk of the Court through the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ Robert D. Younger_____________